**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YURIY DAVYDOV, on behalf of himself and others similarly situated,<br><br>              Plaintiff,<br><br>      vs.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK and JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),<br>              Defendants. | Case No.:<br><br><br><br>**CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

1.     Plaintiff Yuriy Davydov, by and through his undersigned counsel, brings this lawsuit on behalf of himself and all other similarly situated owners of universal life insurance policies issued by Defendants John Hancock Life Insurance Company of New York ("John Hancock NY") and John Hancock Life Insurance Company (U.S.A.) ("John Hancock USA") (collectively "John Hancock") whose Cost of Insurance has been increased unlawfully and in violation of the policies.  Plaintiff alleges as follows based on personal knowledge concerning all facts related to himself and on information and belief concerning all other matters.

**NATURE OF THE ACTION**

2.     This case arises from Defendants' breach of express and implied contractual obligations contained in Defendants' universal life insurance policies.[1]

3.     Defendants sold to Plaintiff and other Class Members universal life insurance

---

[1] Plaintiff is not alleging claims premised on deception at the time of sale of the policies or any other pre-sale conduct by Defendants. Instead, Plaintiff's claims about Defendants' Universal Life Policies are exclusively premised on Defendants' actions in imposing increased Cost of Insurance charges on Universal Life Policies beginning in 2018. All of those acts occurred after the policies were sold.

policies (the "Universal Life Policies") pursuant to which Defendants agreed to credit dividends, cash value, and/or interest on policyholders' accounts in a way that policyholders could use to pay the premium charges and the Cost of Insurance ("COI") on the Universal Life Policies.  For the interest that was supposed to be credited on those policies, Defendants were obligated to credit that interest at guaranteed annual rates generally ranging between 3.0% and 5.5%.

4.     Plaintiff and the other Universal Life Policyholders in the proposed Class (as defined below) purchased these Universal Life Policies so that they and their families and estates would be protected in the event that the policyholder died.  However, beginning in or about May 2018, Defendants suddenly and unilaterally notified Plaintiff and other universal life policyholders that Defendants would increase the Cost of Insurance charged on those policies.

5.     In the notices that Defendants sent, Defendants indicated that the increases to Plaintiff were approximately $300 per year on Plaintiff's Universal Life Policy.

6.     As set forth below, these increases violate the terms of the policies and are part of an improper attempt by Defendants to increase their own profitability by either requiring policyholders to pay more than required by the policies or causing those policyholders to cancel their policies (allowing Defendants to keep for themselves decades-worth of premium payments and releasing Defendants from their obligation to pay the death benefit).

7.     Defendants' increases also violate the terms of the policies because the increases do not apply to all universal life policyholders but only to some, including many who are elderly and who can no longer obtain replacement coverage.

8.     As described in detail below, Defendants' conduct is unlawful.  While the Universal Life policies permit Defendants to adjust the COI rates periodically, they allow Defendants to do so based only on certain specified factors and they prevent Defendants from

changing the rates to recoup prior losses.  As numerous courts have recognized, insurers are legally prohibited from basing COI increases on anything other than the factors specified in the policies.

9.      Despite their representations to policyholders, Defendants' true reasons for imposing the drastic increases were to: (a) subsidize Defendants' cost of meeting its interest rate guarantees under the policies; (b) recoup past losses in violation of the terms of the policies; (c) induce policy terminations by policyholders; and (d) allow Defendants to reverse the pattern of exorbitant losses at their parent company, Manulife Financial, and return the Universal Life Insurance segment of their business to profitability

10.     By violating their contractual duties, Defendants were able to enrich themselves at the expense of policyholders, either by charging those policyholders higher premiums or higher costs than permitted by the policies.  By violating their contractual duties Defendants also hoped to benefit by causing policies to lapse, eliminating Defendants' exposure on the policies while enabling Defendants to keep for themselves years' worth of the premiums the policyholders had already paid.  Defendants often did this just as the policyholders were approaching the age when they most needed the policies.

11.     To maximize the number of policyholders who would surrender their policies and lose their life insurance coverage, Defendants sent letters to Universal Life policyholders directing them to contact a designated company hotline with any questions about the Cost of Insurance increases, rather than directing the policyholders to the agents with whom they had dealt for many years.

12.     As a result of Defendants' actions, hundreds or thousands of class members were and continue to be faced with either paying exorbitant and improper increases that cannot be

justified by the ultimate death benefits of the policies and that violate the policies, or surrendering the policies and walking away from years of premium payments.

13.    As described more fully below, Defendants' sudden and unilateral increases to the Cost of Insurance on the Universal Life Policies violate the plain terms of those policies, breach the covenant of good faith and fair dealing, and violate the law.

14.    Defendants' unlawful practices deprive Plaintiff and the class of the benefits of their contracts. Policyholders are now forced to fund more costs than they otherwise should have to pay. Defendants have thus deprived Plaintiff and other policyholders of one of the most essential rights of the universal life policies -- the right to accumulate cash and manage and fund their accounts according to their needs and desires, as well as to retain excess capital for their own purposes, not for Defendants' purposes.

15.    Defendants' improper practices have harmed policyholders by causing the policyholders to pay more than they should have paid for the policies.

16.    Plaintiff seeks injunctive, declaratory and monetary relief requiring Defendants to reverse the unlawful Cost of Insurance increases and to repay to policyholders the unlawful charges that Defendants have collected or, alternatively, to pay policyholders for the diminished value of their policies.

17.    These increases have already injured Plaintiff and other Class members, and if allowed to proceed, will continue to cause irreparable injury to Plaintiff and other Class members.

**THE PARTIES**

18.    Plaintiff Yuriy Davydov is and was at all relevant times, a resident of New York, and at all relevant times, was the owner of a universal life insurance policy issued by Defendants

to insure the life of his mother, Lyubov Davydova.  In or about August 2007, Defendants issued and sold to Plaintiff a Universal Life Policy insuring the life of Lyubov Davydova. in the face amount of $100,000 (Policy Number xxxxxxxx44). Plaintiff's policy is subject to the Cost of Insurance increases imposed by Defendants beginning in 2018.

19.     Defendant John Hancock Life Insurance Company of New York has its headquarters at 100 Summit Lake Drive, Valhalla, New York.  Upon information and belief, Defendant John Hancock NY is a New York corporation. It operates as a subsidiary of Defendant John Hancock Life Insurance Company (U.S.A.) and was formerly known as The Manufacturers Life Insurance Company of New York, changing its name to John Hancock Life Insurance Company of New York in 2005.

20.     At all relevant times, Defendant John Hancock Life Insurance Company (U.S.A.) is a Michigan corporation and has its headquarters at 601 Congress Street, Boston, Massachusetts. John Hancock USA is the parent of John Hancock NY.  It was formerly known as The Manufacturers Life Insurance Company (U.S.A.) and changed its name in 2005.

21.     Both Defendants are owned by and are subsidiaries of Manulife Financial Corporation ("Manulife"), a publicly traded Canadian corporation.

22.     Upon information and belief, Defendants issued and sold the Universal Life Insurance Policies at issue in this Complaint.

## JURISDICTION AND VENUE

23.     This Court has original jurisdiction over this case under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).  Plaintiff is a citizen of New York and Defendants are citizens of New York or Massachusetts for diversity purposes. Upon information and belief, at least one class member is a citizen of a state different from at least one Defendant. The amount in

controversy in this action exceeds $5,000,000 and there are more than 100 members in the Class.

24.     This Court has personal jurisdiction over Defendants because Defendants are doing business in New York, are engaged in systematic and continuous business activity in New York, have sufficient minimum contacts in New York, or otherwise intentionally avail themselves of the New York consumer market through promoting, marketing, distributing, and selling life insurance policies, including the Universal Life policies at issue in this case. That purposeful availment renders the exercise of jurisdiction by this Court over Defendants appropriate under traditional notions of fair play and substantial justice.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391. Defendants regularly conduct business and maintain substantial operations in this District; many class members reside in this District; a substantial portion of the events or omissions giving rise to the claims alleged herein occurred in this District; and Defendants entered into transactions and received substantial profits in this District. Defendants directed policyholders to contact John Hancock's service office in New York or the "Home Office" in Valhalla, New York concerning the policies.

26.     All conditions precedent to this action have occurred, been performed, or have been waived.

## FACTUAL ALLEGATIONS

**A.     Universal Life Insurance Policies**

27.     Traditionally, life insurance companies sold two types of policies: term and whole life insurance. Term life insurance is issued for a term of years, normally building up no cash value and expiring without value. Whole life insurance provides coverage for life and provides an increasing cash value that is available when needed.

28.    Universal life insurance, like the policies sold by Defendants that are at issue in this Complaint, provides more flexibility than whole or term life insurance. Premium payments, which are variable, are deposited in an accumulation account from which monthly cost of insurance and expense charges are deducted. The accumulation account is credited with monthly interest at a nonguaranteed declared rate, but not less than the guaranteed interest rate specified in the policy contract. Universal life insurance policies allow policyholders to change the amount and frequency of premium payments as long as their policies contain sufficient cash value to cover monthly deductions taken.

29.    In 1981, major life insurance companies entered into the universal life insurance market, and by the end of 1983, virtually all major insurers had introduced at least one universal life product.[2] Universal life policies accounted for more than 25% of all individual life-insurance sales for much of the 1980s, when 10-year Treasury yields peaked at 15%.[3]

30.    Consumers were attracted to universal life policies because of the historically high interest rates. Calculated premiums were based on optimistic interest rate assumptions, most of them guaranteeing at least 3%. High interest rates meant that policyholders did not expect to pay much to fund the policies in their more senior years because the interest would cover future expenses.

31.    Today interest rates are at an all-time low, making it difficult for insurers to credit the rates the insurers promised when they sold the policies years ago. As a result, insurance companies like Defendants are suffering losses due to these life insurance policies, and their

[2] Douglas C. Doll, *A Brief History of Universal Life*, Society of Actuaries, (Jan. 1999), https://www.soa.org/News-and-Publications/Publications-Browse/Monographs/1999/1999-01-A-Brief-History-of-Universal-Life.aspx.

[3] Leslie Scism, *Retirees Stung by "Universal Life" Cost*, Wall Street Journal (Aug. 9, 2015), http://www.wsj.com/articles/cost-of-universal-life-insurance-stings-retirees-1439172119.

attempt to fix the problem consists of impermissibly raising the cost of insurance charges on Universal Life Policies.

**B.      Defendants' Standardized Universal Life Policy Terms**

32.      Plaintiff brings this class action on behalf of owners and former owners of Universal Life Policies issued and administered by Defendants that are subject to the Cost of Insurance increases announced by Defendants in 2018.

33.      The Universal Life Policies use standardized, materially uniform language with respect to the policy provisions at issue in this action.  A redacted copy of the standardized Policy contract for Plaintiff is attached as "Exhibit A".

34.      Defendants' Universal Life Policies use the term "Cost of Insurance Charge". This charge is important to policyholders for at least two reasons: (1) the Cost of Insurance charge is typically the highest expense that a Universal Life policyholder pays; and (2) the Cost of Insurance charge is deducted from the accumulation account (*i.e.*, the savings component) of the Universal Life Policy, so the policyholder forfeits the Cost of Insurance charge entirely to the insurer.

35.      Even small changes in the Cost of Insurance can produce a dramatic increase in the dollar amount charged by Defendants. The higher the Cost of Insurance, the greater the costs that the policyholder is required to pay, or the greater the deduction to the accumulated cash value in the Policy, in order to avoid a lapse of the Policy.

36.      Under the Universal Life policies, Defendants' discretion to set or increase the charges is constrained.

37.      Section 14 of the Policies issued to Plaintiff and to the Class contains the following (or similar) language limiting Defendants' ability to change the Cost of Insurance:

**Cost of Insurance Charge**

The rates for the Cost of Insurance Charge, as of the Policy Date and subsequently for each increase in Total Face Amount, are based on the Life Insured's sex, if applicable, Age, Risk Classification and duration that the coverage has been in force.

The Cost of Insurance Charge for a specific Policy Month is the charge for the Net Amount at Risk, including any Additional Ratings and any Supplementary Benefit riders which are part of the policy. The charge for the Net Amount at Risk is an amount equal to the per dollar cost of insurance rate for that month multiplied by the Net Amount at Risk and **will be based on our expectations of** *future* **mortality, persistency, investment earnings, expense experience, capital and reserve requirements, and tax assumptions.** The Maximum Monthly Rates at any age are shown in Section 2 as a rate per $1,000 of Net Amount at Risk. To get the maximum rate per dollar, the rate shown must be divided by 1,000. Each Cost of Insurance Charge is deducted in advance of the applicable insurance coverage for which we are at risk.

The Cost of Insurance calculation will reflect any adjustment for the Minimum Death Benefit.

**We review our Cost of Insurance rates from time to time, and may re-determine Cost of Insurance rates at that time on a basis that *does not discriminate unfairly within any class of lives insured.***

Exh. A at § 14(emphasis supplied).

38.    The Universal Life Policies do not authorize Defendants to do any of the following:

- Set or increase the charges in whatever amount or by whatever method Defendants determine;

- Set or increase the charges to recoup past losses, including past losses on the Universal Life Policies based on changes in interest rates, Policy lapse rates, or other experience factors;

- Set or increase charges to recoup losses due to diminished returns on Defendants' general investment portfolio; and

- Set or increase charges in order to negate or offset Defendants' obligation to pay credited interest to the Universal Life Policies at the minimum guaranteed rates.

39.     The Universal Life Policies prohibit Defendants from re-determining the Cost of Insurance in a way that discriminates unfairly within any class of insureds.

40.     A reasonable Universal Life policyholder would construe the standardized policy language to mean that Defendants would not increase the charges except for a verifiable, material adverse change in Defendants' expectations about certain "future" experiences.

**C.      Defendants Experience Large Financial Losses in 2017**

41.     During 2017 Defendants' parent company, Manulife, incurred large losses which hampered its business and led it to try to sell part of its insurance business.

42.     During investor calls at the end of 2017, executive officers of Manulife, including its Chief Executive Officer, represented that the company's priority was to "aggressively manage" its "legacy business" (which includes the John Hancock business and the policies at issue in this lawsuit) and to increase the profitability of that business.

43.     On February 7, 2018 Manulife, which is a Canadian corporation, reported a net loss of $1.6 billion[4] for the fourth quarter of 2017 compared to net income $63 million for the fourth quarter of 2016.

44.     In order to improve the profitability of Defendants' business and the insurance segment of Manulife's business (which included the John Hancock business), Defendants implemented a plan to improperly pass on to certain John Hancock Universal Life policyholders larger Cost of Insurance charges.

45.     In May 2018, that is exactly what Defendants began to do, especially on certain long-standing John Hancock insurance policies, many of which insured the lives of policyholders who are elderly and would have significant difficulty finding replacement coverage.

---

[4] Manulife reports its financial results in Canadian dollars. At the time of this Complaint, one United States Dollar is worth approximately 1.31 Canadian Dollars.

46.    As alleged below, Defendants began to increase the Cost of Insurance on Universal Life Policies, putting policyholders in the position of either being forced to pay the large increases (creating more profit for Defendants) or canceling the policies (reducing the risk that Defendants would have to pay on the policies and unjustly enriching Defendants who would then keep the years of premium payments that policyholders had made on those policies).

**D.     In May 2018 Defendants Began Notifying Universal Life Policyholders About The Increased COI And Requiring Universal Life Policyholders To Pay Higher COI In Order To Avoid Having Their Policies Lapse**

47.    In or about May 2018 Defendants began sending letters notifying certain Universal Life Policyholders (including Plaintiff) that Defendants were increasing the Cost of Insurance charges on their Universal Life Policies.

48.    Defendants notified Universal Life Policyholders, including Plaintiff, of the increases through a uniform letter. (*See* "Exhibit B").

49.    In a letter dated May 7, 2018, Defendants purported to explain to Plaintiff that the cost increase was necessary.  The letter informed policyholders that:

> We are writing to let you know that we have completed a review of John Hancock Performance Universal (UL) Life insurance policies. As a result of this review, our expectation of future experience has changed, and therefore the Cost of Insurance rates on your Performance UL policy will be increasing, effective August 8, 2018. We recognize that premium increases are never easy. To understand how this increase affects your policy, and to learn about the options available to you to manage the increase, we encourage you to call 800-582-1102 to speak with a dedicated service representative at your earliest convinces.
>
> We have enclosed two illustrations to help you understand the impact that the increase in Cost of Insurance rates will have on policy values. These illustrations assume sufficient premium for the policy to remain inforce for the insured's lifetime. The yellow copy of the illustration reflects the prior Cost of Insurance rates, and the white copy reflects the new Cost of Insurance rates under the policy.  Both illustrations include an Annual Account Summary section, which includes the insurance rates based on the prior and new Cost of Insurance rates.

These illustrations do not reflect any assumed action that you may ultimately wish to take on your policy.

**Options to Manage the Increase**

There are a number of potential options you may want to consider. They are described generally as follows.

- **To keep your current policy death benefits as is,** you may need to increase your premiums in order to cover the increases in the monthly Cost of Insurance rates.
- **To keep your current premiums the same**, you may be able to reduce the death benefit of your policy. Partial surrender charges may apply in this situation.
- **You can maintain you current policy death benefit and premium payment;** however, you should know that if you choose not to reduce you policy death benefit or increase you premiums, your policy will not remain inforce as originally projected, so it's important to understand your options.

You may surrender your policy, but before doing that we strongly encourage you to consider the value of your policy and the goals you established when you purchased it.

50.    The letter did not disclose the way that Defendants calculated the increase.

51.    Upon information and belief Defendants did not impose the Cost of Insurance on all of John Hancock's Universal Life policies.

52.    The increases announced in May 2018 violated the Universal Life Policies' prohibition on Cost of Insurance increases that "discriminate unfairly within any class of lives insureds." (Exh. A, page 12, section entitled "Cost of Insurance Charge", fourth paragraph.)

53.    These practices by Defendants discriminate unfairly against Universal Life Policyholders because the increases to Cost of Insurance are aimed only at certain Universal Life policyholders. In other words, the increases do not apply to the entire class of Defendants' Universal Life Policies.

54.    To the extent that there is ambiguity about when Defendants can increase the Cost

of Insurance on their Universal Life Policies, that ambiguity should be interpreted against Defendants and in favor of Universal Life Policyholders, including Plaintiff and the Class.

55.    The cost increases that Defendants are imposing on Plaintiff and certain other Universal Life policyholders discriminate unfairly against the Universal Life policyholder Class members.

56.    The increases are attributable to Defendants' impermissible effort to recoup prior losses, offset Defendants' interest expense, and cause policyholders to surrender or lapse their Universal Life Policies.

**E.    Defendants' True Reasons for the Increases**

57.    Defendants' sudden and dramatic increases to Cost of Insurance on Universal Life Policies are based on Defendants' desire to avoid their contractual obligations, to recoup past losses, and to aggressively return profitability to Defendants and to Manulife's insurance business.

58.    As alleged above, for years Defendants have collected premiums from policyholders on Universal Life Policies. Defendants now seek to increase the Cost of Insurance on certain Universal Life Policies to impermissibly recoup past losses and benefit Defendants at the expense of policyholders.

59.    Because the policies and other interest sensitive insurance products sold by Defendants were not lapsing quickly enough to allow Defendants to release reserves and free up enough capital to satisfy the demand for cash-flows, Defendants engineered a series of increases, based on existing and anticipated future monthly deduction charges and related expenses.

60.    During the Class Period Defendants (and their parent Manulife) were facing severe financial stress and were experiencing weakened financial results, impaired cash flows,

depleted capital, and other financial losses that Defendants would later seek to recoup through the increases to Cost of Insurance on a subset of the Universal Life Policies.

61.    Defendants imposed the Cost of Insurance increases on the Universal Life policies in contravention of Defendants' contractual obligations to the policyholders.

**F.    Defendants Seek to Inflict Massive Shock Lapses**

62.    As alleged above, Defendants have saddled Plaintiff and other Class members with the onerous Cost of Insurance increases on Universal Life Policies.

63.    In an unconscionable disregard for the rights and interests of their policyholders, Defendants have effectively demanded that the policyholders themselves restore the profitability of the policies to Defendants by paying increased costs on the Universal Life Policies.

64.    Defendants' true motive behind these practices is to benefit John Hancock and Manulife at the expense of Defendants' Universal Life policyholders.

65.    Unless enjoined, Defendants' practices will benefit Defendants at the expense of policyholders and will cause "shock lapses," minimizing Defendants' losses and reaping profits. To the extent policyholders decide or are forced to surrender their policies as a result of Defendants' practices, Defendants will wipe from their books the unprofitable policies. Defendants know, and fully expect, that the increased Cost of Insurance charges will cause Class members to surrender their policies and cause policies to lapse.

66.    The likelihood of a surrender or lapse increases dramatically when there is an increase in charges or a depletion in cash value, and the policyholder must decide whether he or she can afford to maintain the policy, especially when the information supplied to the policyholder is deliberately designed to provoke surrender or lapse.

67.    Defendants have actively sought to encourage and provoke class members to

terminate their Policies or reduce the face amount of coverage.

68.     Defendants also have created obstacles that preclude policyholders from obtaining the information they need to evaluate their options.    Defendants systematically direct policyholders to speak with Defendants' "dedicated service representatives" to obtain information and answers to questions about the costs and options. Policyholders often must make multiple calls or remain on hold for extended periods of time to contact the Defendants' representatives.    Moreover, policyholders are often given confusing or conflicting answers to their questions.

69.     Defendants' tactics, combined with their exorbitant and impermissible premiums, make it more likely that policies will be surrendered or will lapse.

70.     Plaintiff and the Class have been and continue to be damaged by Defendants' improper and unjustifiable practices.

71.     Plaintiff and the other Class members are now required to pay much higher costs to maintain the same level of coverage under the policies such that their policies will become much more expensive, may become cost-prohibitive, or their accumulated cash value will be depleted to pay the Cost of Insurance increases, if the increases are not enjoined.

## N.    Defendants' Unconscionable Conduct Must Be Enjoined

72.     Unless stopped, Defendants will induce policyholders to surrender their Policies for the current cash value.    These widespread terminations—also known as "shock lapses"—will in turn benefit Defendants because Defendants will not have to pay out the death benefits on policies for which Plaintiff and the Class have dutifully paid the premiums for years.

73.     Through increases to the costs of Universal Life Policies, Defendants are attempting to avoid their obligations under the Universal Life Policies and are attempting to

recoup past losses and shed the policies by making them cost-prohibitive for policyholders, thereby frustrating policyholders' ability to receive their contractual benefits under the policies.

74.    The Class members hardest hit by Defendants' unconscionable business practice are policyholders who have dutifully paid premiums for years based on the expectation that their policies would provide protection for their families. Now, after years of paying their premiums, these policyholders often are unable to get replacement coverage or that coverage is prohibitively expensive.

75.    Defendants' attempt to deprive policyholders of the primary benefit of their policies—paid for through years of contributions—violates Defendants' express and implied obligations under the Policies.

76.    These policyholders face the prospect of: (1) surrendering their policies and losing their death benefits at an age when purchasing other life insurance coverage is difficult or impossible; (2) permitting Defendants to deplete their policy values and create "shock lapses"; (3) paying vastly increased costs with no assurance that those costs will not continue to increase; or (4) accepting cuts in death benefits.

77.    As a result of Defendants' actions, Class members are faced with the difficult decision of either paying the exorbitant and unjustified new charges or forever forgoing the life insurance benefits for which they have dutifully paid premiums for many years.

78.    Plaintiff therefore seeks immediate preliminary injunctive and equitable relief to preserve the status quo *pendente lite* by enjoining the Cost of Insurance increases and the termination of policies due to the increases.  Unless Defendants are enjoined, policyholders will be irreparably damaged and Defendants will succeed with their plan to impose improper charges and cause mass cancellations of the policies—leaving policyholders without coverage or with

reduced coverage based on unlawful, unfair and abusive practices. Plaintiff also seeks permanent declaratory and injunctive relief requiring Defendants to (i) reverse the unlawful increases charged on the policies, and (ii) reinstate all policies that were surrendered or lapsed as a result of the increase. Plaintiff also seeks ancillary damages flowing directly from Defendants' unlawful conduct.

## CLASS ACTION ALLEGATIONS

79.     This action is brought by Plaintiff individually and on behalf of the Class described below (the "Class") pursuant to Rule 23, subdivisions (a), (b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

80.     Plaintiff seeks certification of the following Class:

> All current and former owners of universal life insurance policies issued or administered by Defendants (or their predecessors, successors and affiliates) who have been subjected to John Hancock's 2018 announcement about the increase to the Cost of Insurance rates on those policies.

81.     Excluded from the Class are (1) any Judge or Magistrate Judge presiding over this action and their family members; (2) Defendants and each of their corporate parents, subsidiaries and affiliates, officers and directors, and any entity in which any Defendant has a controlling interest; (3) persons who properly and timely request to be excluded; and (4) the legal representatives, successors, or assigns of any such excluded persons or entities.

82.     There are at least hundreds of members of the Class described in the foregoing paragraph. The Class consists of hundreds, if not thousands, of Defendants' policyholders and is thus so numerous that joinder of all members is impracticable. Although the exact number of members is unknown to Plaintiff at this time, the identities and addresses of the members of the Class can be readily determined from business records maintained by Defendants.

83.    Plaintiff's claims are typical of those belonging to class members. Plaintiff's claims stem from Defendants' impermissible practices as alleged in this Complaint.

84.    Plaintiff will fairly and adequately protect the interests of the Class members, and has retained counsel experienced in complex class action litigation. Plaintiff and his counsel have no interests which are adverse to those belonging to the Class members that Plaintiff seeks to represent.

**A.    Rule 23(b)(1)**

85.    Class action status is warranted under Rule 23(b)(1)(A). Prosecuting separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants.

86.    Class action status is also warranted under Rule 23(b)(1)(B). Prosecuting separate actions by or against individual members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

**B.    Rule 23(b)(2)**

87.    This action is appropriate as a class action pursuant to Rule 23(b)(2). Plaintiff seeks injunctive relief and corresponding declaratory relief for the Class. Defendants have acted in a manner generally applicable to each member of the Class.

88.    Defendants' unlawful practices, if not enjoined, will subject Plaintiff and Class members to enormous continuing future harm and will cause irreparable injuries to such policyholders, who are compelled to surrender valuable life insurance policies with no

economically viable option for alternative life insurance. The adverse financial impact of

Defendants' unlawful actions is continuing and, unless preliminarily and permanently enjoined,

will continue to irreparably injure Plaintiff and Class members.

     **C.**      **Rule 23(b)(3)**

     89.     This action is also appropriate as a class action pursuant to Federal Rule of Civil

Procedure 23(b)(3). Common questions of law and fact predominate over any individualized

questions. Common legal and factual questions include the following:

     a.     Whether Defendants' large and sudden increase in the cost of insurance on Universal Life Policies is authorized under the terms of the policies;

     b.     Whether Defendants breached their contractual obligations owed to Plaintiff and Class members;

     c.     Whether Defendants breached their implied duty of good faith and fair dealing owed to Plaintiff and the Class members;

     d.     Whether Plaintiff and Class members have been damaged, and if so, are eligible for and entitled to compensatory and punitive damages;

     e.     Whether Plaintiff and Class members are entitled to declaratory relief; and

     f.     Whether Plaintiff and Class members are entitled to preliminary or permanent injunctive relief, or other equitable relief, against Defendants.

     90.     A class action is superior to other available methods for the fair and efficient

adjudication of this controversy, for the following reasons:

     a.     Given the complexity of the issues involved in this action and the expense of litigating the claims, few, if any, Class members could afford to seek legal redress individually for the wrongs that Defendants have committed against them, and absent Class members have no substantial interest in individually controlling the prosecution of individual actions;

     b.     Once Defendants' liability has been adjudicated respecting the increases, claims of all Class members can be determined by the Court;

     c.     This action will ensure an orderly and expeditious administration of the claims and foster economies of time, effort, and expense, and ensure uniformity of

decisions and compliance by Defendants with the Policies;

d.    Without a class action, many Class members would continue to suffer injury, and Defendants' violations of law will continue without redress while Defendants continue to reap and retain the substantial proceeds and reductions in their future liabilities derived from their wrongful conduct; and

e.    This action does not present any undue difficulties that would impede its management by the Court as a class action.

91.    A class action is superior to other available means for the fair and efficient adjudication of this controversy for other reasons as well. The injuries suffered by individual Class members are, though important to them, relatively small compared to the burden and expense of individual prosecution needed to address Defendants' conduct. Individualized litigation presents a potential for inconsistent or contradictory judgments. In contrast, a class action presents far fewer management difficulties; allows the hearing of claims that might otherwise go unaddressed; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

92.    Plaintiff cannot be certain of the form and manner of proposed notice to Class members until the Class is finally defined and discovery is completed regarding the identity of class members. Plaintiff anticipates, however, that notice by mail will be given to Class members who can be identified specifically. In addition, notice may be published in appropriate publications, on the Internet, in press releases and in similar communications in a way that is targeted to reach class members. The cost of notice, after class certification, trial, or settlement before trial, should be borne by Defendants.

93.    Plaintiff reserves the right to modify or amend the definition of the proposed Class at any time before the Class is certified by the Court.

## FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT

94.     Plaintiff re-alleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

95.     Plaintiff brings this claim on behalf of himself and on behalf of the Class.

96.     The policies are valid, enforceable contracts between Plaintiff and other Class members on the one hand and Defendants on the other.

97.     At all relevant times, Plaintiff and the Class members have paid monthly, quarterly or annual Cost of Insurance charges established at the inception of the policies, and have otherwise performed all other obligations under the Policies.

98.     As alleged above, Defendants owed duties and obligations to Plaintiff and Class members under the policies, including refraining from imposing charges except as authorized under the terms of the Policies.

99.     Through the Cost of Insurance increase on Universal Life Policies, Defendants have materially breached the terms and provisions of the Policies by increasing the Cost of Insurance in a way that is not permitted under the Policies; that is, in order to reduce Defendants' credited interest obligations to Plaintiff and the Class of Universal Life policyholders and to recoup past losses.

100.    At a minimum, the Cost of Insurance increase is of such a magnitude that, even if legitimate Cost of Insurance increases were a factor, Defendants necessarily considered impermissible factors other than the Cost of Insurance and the experience factors set forth in the policies in setting the level of the increase.

101.    Defendants' conduct and material breaches of the Policies have proximately caused damage to Plaintiff and the Class members in an amount to be determined at trial.

102.   In addition, unless Defendants are preliminarily and permanently enjoined from continuing their unlawful conduct, Plaintiff and the Class members will suffer severe and irreparable injuries for which they have no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

103.   Plaintiff re-alleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

104.   Plaintiff alleges this claim in the alternative to the First Claim for Relief.

105.   Plaintiff brings this claim on behalf of Plaintiff and on behalf of the Class.

106.   The Policies are valid, enforceable contracts between Plaintiff and other Class members and Defendants.

107.   Implied in each Policy is a contractual covenant of good faith and fair dealing through which Defendants owed Plaintiff and Class members a duty to act in good faith and deal fairly, and in a manner that did not frustrate their reasonable expectations under the Policies.

108.   On the Universal Life Policies, Defendants breached the covenant of good faith and fair dealing because, to the extent those Defendants had the discretion to increase the policy charges, including the Cost of Insurance, that discretion was sufficiently constrained under the terms of the policies to support an implied obligation of good faith and fair dealing with respect to those increases.

109.   Defendants exercised their discretion under the policies in bad faith and breached the implied covenant of good faith and fair dealing by, among other things:

   a.   Exercising their discretion to increase the charges on policyholders to recoup past losses;

   b.   Misrepresenting to Plaintiff and Class members the reasons for the increases;

c.   Intending for the increases to force Plaintiff and Class members to surrender their policies so Defendants would not have to pay the death benefits;

d.   Negating the value of what were intended to be guaranteed interest rates, which Defendants had no right to do; and

e.   Increasing the Cost of Insurance in a way that was intended to benefit Defendants at the expense of Plaintiff and the other Universal Life Policyholders.

110.   Defendants' contractual breaches of the covenant of good faith and fair dealing have proximately caused damage to Plaintiff and the Class members in an amount to be determined at the time of trial.

111.   In addition, unless Defendants are preliminarily and permanently enjoined from their improper and illegal practices and their breaches of the covenant of good faith and fair dealing, Plaintiff and Class members will suffer severe and irreparable injuries for which they have no adequate remedy at law.

**THIRD CLAIM FOR RELIEF**
**DECLARATORY RELIEF**

112.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

113.   Plaintiff brings this claim on behalf of Plaintiff and the Class.

114.   An actual controversy has arisen and now exists between Plaintiff and the Class members, on the one hand, and Defendants, on the other hand, concerning the respective rights and duties of the parties under the policies.

115.   Defendants materially breached the express and implied terms of the policies and acted unlawfully by increasing the Cost of Insurance on certain Universal Life Policies.

116.   Plaintiff, on behalf of Plaintiff and the Class, seeks a declaration as to the parties' respective rights under the Policies and requests the Court to declare that Defendants' practices

alleged in this Complaint are unlawful and are in material breach of the Policies' terms so that future controversies may be avoided.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of Plaintiff and the Class, prays for relief as follows:

a) An Order certifying this action to proceed on behalf of the Class and appointing Plaintiff and Plaintiff's counsel listed below to represent the Class;

b) An Order awarding Plaintiff and Class members entitled to such relief, restitution and/or disgorgement and such other equitable relief as the Court deems proper;

c) An Order enjoining Defendants, their representatives, and all others acting with them or on their behalf from unlawfully charging excessive Cost of Insurance increases for the Universal Life Policies;

d) An Order providing preliminary and permanent injunctive relief enjoining Defendants, their representatives, and all others acting with them or on their behalf, from terminating Universal Life Policies while Defendants impose impermissible Cost of Insurance increases;

e) An Order that the increases to Cost of Insurance breached the Universal Life Policies, and that Defendants must determine the increases only on the grounds authorized under the Policies;

f) An Order awarding Plaintiff and other Class members who might be entitled to such relief actual, compensatory, statutory, punitive, and/or exemplary damages;

g) An Order awarding Plaintiff's attorneys fees and other costs; and

h) An Order awarding such other and further relief as may be just and proper, including pre-judgment and post-judgment interest on the above amounts.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b), Plaintiff and the Class demand a trial by jury.

Dated: October 24, 2018                Respectfully submitted,

By:/s/ *Stephen J. Fearon, Jr.*

Stephen J. Fearon, Jr
**SQUITIERI & FEARON, LLP**
32 East 57th Street
12th Floor

New York, New York 10022
Telephone: (212) 421-6492
Facsimile: (212) 421-6553
Email: stephen@sfclasslaw.com

Joseph Santoli
LAW OFFICE OF JOSEPH SANTOLI
340 Devon Court
Ridgewood, New Jersey 07450
Telephone:  (201) 926-9200
Facsimile:   (201) 444-0981
Email: josephsantoli@aol.com

**Attorneys for Plaintiff and the Proposed Class**