UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICOF II TRUST; VIDA LONGEVITY FUND, LP; PF PARTICIPATION FUNDING TRUST; LIFE ASSETS TRUST II S.A. DELAWARE TRUST; VIDAQUANT SUB-FUND DELAWARE TRUST; VIDA INSURANCE FUND II SERIES INTERESTS OF THE MULTI-SERIES FUND, LP; DLP MASTER TRUST; DLP MASTER TRUST II, GWG DLP MASTER TRUST; LIFE FUNDING TRUST; PALM BEACH SETTLEMENT COMPANY; EFG BANK AG, CAYMAN BRANCH; WELLS FARGO BANK, NA, AS SECURITIES INTERMEDIARY FOR VICOF II TRUST, VIDA LONGEVITY FUND, LP, PF PARTICIPATION FUNDING TRUST, LIFE ASSETS TRUST II S.A. DELAWARE TRUST, VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI-MULTI-SERIES FUND, LP, VIDAQUANT SUB-FUND DELAWARE TRUST, VIDA INSURA, EFG BANK AG, CAYMAN BRANCH,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK and JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),<br><br>Defendants. | **ORDER AND OPINION DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Index Nos.<br>19-cv-11093 (AKH) |
| YURIY DAVYDOV,<br><br>Plaintiff,<br><br>v.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK and JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),<br><br>Defendants. | 18-cv-9825 (AKH) |

ALVIN K. HELLERSTEIN, U.S.D.J.:

Plaintiffs[1] VICOF II Trust and others, Case No. 19-CV-11903, and Yuriy Davydof, Case No. 18-CV-9825, purchased universal life ("UL") insurance policies issued by Defendants John Hancock Life Insurance Company of New York and John Hancock Life Insurance Company of America ("John Hancock"). The policies gave John Hancock a limited right to adjust and increase the monthly premiums by changing Cost of Insurance (COI) rates (the money the life insurer needs to cover policy costs and administration). The COI rates in Plaintiffs' policies could be changed only according to defined factors: John Hancock's future expectations of persistency,[2] mortality, expense and reinsurance costs, and future tax, reserve and capital requirements, and only if John Hancock imposed the increases on a uniform basis and without unfair discrimination as to a class of insureds.[3]

John Hancock moves for summary judgment. (ECF No. 187.) It claims that premium increases on Plaintiffs' policies are consistent with the policies. Plaintiffs claim the contrary. I hold that the disputes raise genuine issues of material facts, precluding summary judgment.

## BACKGROUND

Universal life insurance policies are sold on the basis of defined premiums, increasing with the policy holder's age, and have both an insurance and savings component,[4]

---

[1] The two above-captioned actions have been consolidated for trial purposes with the related case, *LSH Co. v. John Hancock Ins. Co. of NY et al.*, No. 19-CV-1009. John Hancock has not sought summary judgment in that action. A class action, *Jeffrey Leonard v. John Hancock Life Ins. Co. of NY et al.*, No. 18-CV-4994 was settled, the class was certified, and an order of final approval, following a fairness hearing, was entered on May 17, 2022, *see* ECF No. 221.

[2] Although not expressly defined, persistency refers to the likelihood that a policyholder will hold onto the policy until maturity (death) rather than allowing the policy to lapse.

[3] Discovery has been completed and a trial date has been set for March 6, 2023.

[4] The savings feature can be structured to avoid estate taxes, and is principally desirable for that purpose.

maintained in a policyholder's policy account. The premiums also can be adjusted according to defined cost-of-insurance ("COI") increases.

Plaintiffs are the owners of John Hancock's universal life insurance policies, having purchased them in markets enabling secondary sales. The policies in issue were written on one of two policy forms, 03PERFUL or 06PERFUL, and issued as one of six products.[5] Each policy permits John Hancock to adjust the COI rates, but only according to defined factors: its "expectations of future investment earnings, persistency, mortality, expense and reinsurance costs and future tax, reserve and capital requirements." In addition, John Hancock may make these adjustments only "on a uniform basis for insureds of the same sex, Issue Age, and premium class, including smoker status, and whose policies have been in force for the same length of time" (03PERFUL) or "on a basis that does not discriminate unfairly within any class of lives insured" (06PERFUL).

John Hancock designed and marketed its policies to stress lower-than-market premiums, particularly in older age groups, indeed the lowest rates in the industry. It anticipated that it would earn larger profits in early years and declining profits and even losses in later years, when COI rates were projected to fall below mortality rates. John Hancock referred to its design as producing "deficient" or "insufficient" COI rates at older issue ages and later durations.[6] And to the extent that older policyholders allowed policies to lapse because of changed circumstances or inability or unwillingness to pay premiums, the profits to John Hancock would be even greater.

---

[5] The six products were Performance UL Core; Performance UL Core Re-Price; Performance UL 2006; Performance UL 2007; Performance UL 2008; and Performance UL 2008 Re-Price.
[6] *See* LeSalle Decl., ECF No. 194-14, at 36 (citing JH37LAR_0101074; Deposition of Actuary Stephen O'Brien at 433; JH37LAR_0253484 at -487).

John Hancock priced its policies based on its assumptions of sales at 10-year age groupings, and limited sales to older persons. The actual purchasing patterns differed markedly, as shown by the following table.

**Performance UL Products**

| Issue Age | Assumed Percentage of Sales of Total Policies Sold | Actual Percentage Sales of Total Policies Sold |
|---|---|---|
| 70-79 | 4 | 46 |
| 80-85 | 3 | 22 |
| 85+ | 0 | |

**Performance UL Core Products**

| Issue Age | Assumed Percentage of Sales of Total Policies Sold | Actual Percentage Sales of Total Policies Sold |
|---|---|---|
| 70-79 | 35 | 48 |
| 80-89 | 25 | 39.2 |

John Hancock's disappointed expectations caused an internal review in 2016 and 2017 and changes in the COI of its performance policies. In October 2017, it sought approval of the New York Department of Financial Services (NYDFS) of proposed COI rate increases based on a deterioration of profit expectations. In January 2018, the NYDFS objected on the ground that John Hancock's original pricing assumptions, particularly with respect to mortality, lapse, and surrender rate, were overly aggressive and unreasonable. One of the NYDFS's Chief Life Actuaries remarked that the proposal suggested a case of bait and switch pricing, and that John Hancock knew or should have known that its mortality and lapse assumptions were too optimistic.[7]

John Hancock then created "modified original pricing assumptions" and, in February 2018, submitted revised COI rate increases to the NYDFS. On March 9, 2018, the

---

[7] *See* LeSalle Decl., ECF No. 194-11, at 195; *id.*, ECF No. 194-14 at 55 (citing Deposition of Tony Teta).

NYDFS issued a non-disapproval letter stating that the proposed changes did not violate any New York State statutes or regulations.[8] Upon receipt, John Hancock finalized COI rate increases and explained its rationale in a Readjustment Memo.[9] Instead of pricing according to ten-year age bands as when the policies were sold, John Hancock used five-year age bands, and focused its premium increases on older beneficiaries. Of 3,822 Performance UL policies extant in December 31, 2017, John Hancock selected only 1,500 for premium increases, and varied the increases according to issue age of beneficiaries. No rate increases were assigned to policies with issue ages of 60 or below, or if the proposed increase did not equal or exceed 5 percent. This left 1,500 policies sold to issue ages greater than 60 and, on these, COI rate increases were imposed ranging from 5 to 75 percent, with an average of 32 percent — the older the age bracket, the higher the rate increase. In addition, policies with higher issue ages received higher average rate increases. As to Performance UL 06 policies, the average rate increase for policies with issue ages 76 and above was over 40 percent, whereas the average rate increase for issue ages 66-70 was 16 percent, and for issue ages 61-65 only 7 percent. John Hancock stated that it based its rate increases on two of the five categories provided in the policies: mortality and persistency.[10]

---

[8] *See* LeSalle Decl., ECF No. 194-11, at 44.
[9] *See generally* Local Rule 56.1 Statement, ECF No. 192 ¶ 22; LeSalle Decl., ECF No. 194-1; *see also id.*, ECF No. 194-13, at 2.
[10] *See* Local Rule 56.1 Statement, ECF No. 192, ¶¶ 24, 31, 34, 35.

John Hancock estimated in its Readjustment Memo that the rate increases would produce profits,[11] of $315 million, and avoid losses, based on the "modified original pricing assumptions," of $339 million.[12]

In May 2018, John Hancock notified Performance UL policyholders of the COI rate increases.

Plaintiffs make two claims: the COI rate increases were based, not on changes in mortality and persistency, but on eliminating the beneficial rate structure in older years that was the heart of John Hancock's marketing program and which induced Plaintiffs to purchase the policies and, second, that the imposition of different rate increases based on newly-defined subclasses violated the policies' requirements that the rate increases be imposed "on a uniform basis for insureds of the same sex, issue age, and premium class, including smoker status, and whose policies have been in force for the same length of time" or "on a basis that does not discriminate unfairly within any class of lives insured."

## DISCUSSION

I.    Legal Standard

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must "view the evidence

---

[11] John Hancock considered the present values of future net cashflows ("PVFC"), which is defined as profit margin, and compared PVFC calculated using its modified original and current pricing assumptions. *See id.* ¶¶ 25, 26; *see also* LeSalle Decl., ECF No. 194-11 at 100.

[12] *See* LeSalle Decl., ECF No. 194-15 at 26 (comparing JH_LEONARD_000011784 at -01 (noting that the present value of the increase in COI rates was $507 million) with JH_LEONARD_000000498 at -01 (noting that the present value of the increase in COI rates was $255 million)).

in the light most favorable to the party opposing summary judgment[,] . . . draw all reasonable inferences in favor of that party, and . . . eschew credibility assessments." *Amnesty Am. V. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004).

II.     Analysis

John Hancock has not met its burden to show an absence of a genuine dispute of material fact. I identify several below.

### *Future Expectations Claims*

There is a genuine dispute of material facts as to whether John Hancock could increase premiums when its motivation was to rectify its disappointment in the profitability of its policies. John Hancock maintains that it was allowed to base cost-of-insurance rate increases on changes of mortality of beneficiaries and persistence in maintaining policies, two of the five factors provided by the policies, and contends that the letter of non-disapproval of the NYDFS confirms its position. It contends that it was permitted to consider its profits as an indicator of mortality and persistence changes. Plaintiffs disagree. They contend that profit was the driving factor, that the quest for profits motivated John Hancock to reverse-engineer its rate increases to course-correct for the decreased profits or losses that were built into the original pricing assumptions of the policies, and that the letter of the NYDFS is neither relevant nor conclusive.

I cannot resolve this dispute on the summary judgment record.

### *Nondiscrimination Claims*

As to Plaintiffs' nondiscrimination claims, their viability turns on the definition of class. The Policies prohibit John Hancock from imposing COI rate increases that discriminate unfairly with any class of lives insured. However, the policies do not define "class," and there has been no showing of an industry usage that is so "well settled" and "uniformly acted upon"

that would allow me to resolve the dispute as a matter of law. *See In re Axa Equitable Life Ins. Co. COI Litig.*, Case No. 16-CV-740, 2020 U.S. Dist. LEXIS 60920, *30–31 (S.D.N.Y. March 31, 2022). John Hancock claims it is entitled to summary judgment as to the nondiscrimination claims because Plaintiffs cannot show that any discrimination was unfair (which John Hancock contends means lacking a proper underwriting basis) because John Hancock used sex, risk class, and issue age (factors tied to mortality) to differentiate between COI rate increases, and because New York law permits insurers to charge different rates to different classes of insureds. The argument fails because even assuming that John Hancock was entitled to treat classes of insureds differently, it begs the question of whether John Hancock was entitled to redefine the classes which were the bases for its sales of policies.

John Hancock contends that it acted permissibly when it subdivided policy classes into five-year bands rather than the 10-year bands of the original pricing assumptions. However, the argument hides a significant factor: a 10-year band will produce a lower mortality rate (because of younger people in the band) than a five-year band, and thus provides internal justification for an excessively low premium. John Hancock contends that the five-year bands allowed it to identify changes in future expectations more precisely, and that the policies directly conferred it with discretion to do so. Plaintiffs contend that the changing of age bands were pretexts for charging higher premiums to older persons, and that John Hancock did not have discretion to take away the basis of its sales of policies to Plaintiffs, and Plaintiffs' basis for purchasing these policies.

Again, I cannot decide this disputed fact on the summary judgment record.

## CONCLUSION

For the reasons discussed, John Hancock's motion for summary judgment is denied. The Clerk of Court shall terminate ECF No. 187. Trial shall begin, as scheduled, on March 6, 2023, with a final pre-trial conference on February 23, 2023, at 2:30 p.m., in Courtroom 14D.

SO ORDERED.

Dated: October 17, 2022
New York, NY

/s/ Alvin K. Hellerstein
ALVIN K. HELLERSTEIN
United States District Court Judge